

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

March 18 , 1970

Honorable O. N. Humphreys, Jr.
Administrator
Texas Liquor Control Board
Sam Houston State Office Building
Captiol Station
Austin, Texas   78711

Opinion No. M-598

Re: Airline-Beverage Permits
under Article I, Section
15 (21) Texas Liquor Con-
trol Act.

Dear Mr. Humphreys:

The 61st Legislature amended the Texas Liquor Control
Act by providing for a new "Airline-Beverage Permit."
[Article 666-15(21), V.P.C., Acts 1969, 61st Leg., 2d C.S.,
ch. 1, Art. 6, sec. 3, p.5, 37-38]. You have inquired
as to the implications of this amendment as follows:

"Question No. 1. Does an Airline-Bev-
erage Permit authorize the holder to pur-
chase alcoholic beverages outside of Texas,
transport same into Texas, and store same
at airports in Texas?

"Question No. 2. If the answer to
Question No. 1 is 'yes,' does an Airline-
Beverage Permit further authorize the
holder to supply its passenger aircraft
departing from Texas airports to be served
to the passengers aboard the flight, with
the alcoholic beverages previously pur-
chased outside of Texas and stored at an
airport in Texas?

"Question No. 3. Do alcoholic beverages
purchased outside of Texas become taxable
under Article I, Section 21, T.L.C.A.;
Article I, Section 21 1/8, T.L.C.A.; or
Article II, Section 23, T.L.C.A., upon
the occurrence of any of the events or trans-
actions described in Questions No. 1 and
2 above?"

-2847-

Our answer to your questions are as follows:  Question No. 1 "Yes"; Question No. 2, "Yes"; Question No. 3, "Alcoholic beverages purchased, transported, stored and sold in accordance with the procedures in question become taxable upon the first actual sale or consumption within Texas."

The relevant provisions of Article 666-15(21), Vernon's Penal Code, as amended, may be paraphrased as follows:

(1)  The Legislature declares that nothing in the Texas Liquor Control Act prohibits selling or serving of alcoholic beverages in any size containers on commercial passenger airplanes even though "dry" areas may be traversed during the course of flight; provided a special $1000 airline beverage permit is obtained annually from the Alcoholic Beverage Commission.

(2)  Permittees are exempted from Article I, Sections 15(a) 7 and 18 of the Act which relate respectively to the taxing power of county commissioner's courts, and residence-ownership requirements for other permittees.

(3)  Permittees are authorized to store alcoholic beverages at airports in any size sealed containers subject to rules and regulations.

(4)  Taxes imposed on alcoholic beverages on board aircraft departing this state are to be paid pursuant to rules and regulations.

(5)  Permittees are exempt from the Limited Sales, Excise and Use Tax Act, and in lieu thereof, a five cents per drink service fee is assessed for each serving of an alcoholic beverage within this state which fee permittees may absorb and remit monthly pursuant to rules and regulations.

(6)  Retail package store permittees are granted exclusive rights to sell alcoholic beverages in any size containers to Airline-Beverage Permit holders.  Such containers are allowed through the ordinary manufacturer-importer-wholesaler-retailer channels for such sales.

Although the amendment does not deal expressly with out-of-state purchase, importation and storage of liquor, yet we think the Legislature enacted definite provisions which have no meaning unless it presumed such activity would occur. We therefore conclude that the Airline Beverage Permit impliedly authorizes the procedures outlined in question number one.

We do not think that subsection (f) of the amendment[1] prohibits out-of-state purchasing, importation and storage in this state. This subsection simply requires that, among the various permittees authorized to sell liquor in Texas, only retailers are allowed to sell to Airline Beverage Permittees.[2]

The question thus becomes whether the subsection impliedly prohibits transportation into the state of such liquor. To so conclude, one would have to reason that subsection (f) requires that all beverages on airliners in Texas be purchased from a Texas retailer. To comply, airliners entering this state would either have to jettison all out-of-state liquor or consider it subject to forfeiture as an illicit beverage. [cf. Art. 666-§§3a(4); 42(a); 17 (13) V.P.C.] Nothing in the amendment indicates legislative intent for such requirements.

On the other hand, there are affirmative indictions that the Legislature contemplated that permittees would import liquor purchased out-of-state. Subsection (d) of the amendment reads as follows:

"As to all alcoholic beverages on board any commercial passenger aircraft departing from any airport in this state, the taxes

---

[1]"Only the holder of a Package Store Permit shall be authorized to sell liquor to the holder of an Airline-Beverage Permit; and for the purposes of this Act, any sale of liquor to the holder of an Airline-Beverage Permit shall be considered a sale at retail to a consumer." [Art. 666-15(21f), V.P.C.]

[2]By requiring all sales in Texas to be made at retail, payment of the retail sales tax is also assured.

imposed by the Texas Liquor Control Act
shall be paid as prescribed by rules and
regulations of the Board."   (Emphasis added).

If any beverages on departing aircraft were purchased at
retail, the taxes would already have been paid at the time
of delivery from the wholesaler to the retailer. [cf. Art.
666-§§21, 21 1/8A(1)b quoted infra].  Thus, the quoted
provision would be unnecessary and meaningless in that
there would be no occasion for a reporting system, rules
and regulations for payment of taxes already paid.  The
Legislature is not presumed to have passed a meaningless
statute.  cf. 53 Tex.Jur.2d 272, Statutes, Sec. 182.

Further, we conclude that the Legislature envisioned
beverages on departing aircraft for which the appropriate
taxes might not have been paid, viz. out-of-state imported
liquor.  The legislature therefore directed the Commission
to prescribe rules and regulations for reporting and paying
taxes on such liquor.

Another 61st Legislature amendment,[3] while not part
of the Airline Beverage Permit provisions, is pertinent;
it provides as follows:

"It is not intended that the tax levied
in Section 21 of Article I of the Texas
Liquor Control Act [the gallonage tax re-
ferred to in question number three] shall
be collected on liquor shipped out of this
state for consumption outside this state
. . . and the Board shall provide forms for
obtaining exemption from or credit for such
taxes and shall provide by rule and regu-
lation for equitable and final disposition
of any tax credit brought about by such
payment of any such unintended or excess."

There is heavy traffic from Texas terminals to out-
of-state airports.  To conclude that aircraft must be sup-
plied only with liquor purchased at retail in Texas would
inevitably require an inundating refund claim procedure
on liquor consumed out-of-state.  Moreover, a complex
adjudicative system for the "equitable and final dis-
position" of excess taxes would have to be devised.

---

[3]Acts 1969, 61st Leg., R.S., ch. 38, p. 80, 96-98,
Sec. 17, codified as Art. 666-21 1/8A, V.P.C.

The Alcoholic Beverage Commission is at present totally ungeared for such procedures, and nothing in the recent amendments indicates legislative intent that the Commission's procedures be so extensively revised.

To the contrary, the Legislature declared that taxes on Liquor shipped out-of-state for consumption not be collected in the first place, thereby necessitating only nominal and incidental refund procedures. The only discernible conclusion again appears to be that the Legislature foresaw the possibility of beverages on board departing aircraft for which the tax had been unpaid, and specifically declared its policy only to tax such liquor as might be consumed within this State.

The act allows storage at airports pursuant to the rules and regulations of the Commission. We deem it evident that all liquor lawfully purchased and transported pursuant to the Airline Beverage Permit, whether from within or without Texas, may be stored at Texas terminals. Our answer to your question number one is "yes."

You further ask whether beverages so puchased and transported may be used to supply aircraft departing from Texas. We see nothing in the recent amendments to suggest that Airline Beverage Permittees cannot supply departing aircraft with liquor which they have lawfully purchased and stored pursuant to an airline beverage permit. Accordingly, we answer your second question affirmatively.

Assuming liquor has been purchased out-of-state, transported to a Texas terminal, stored, and supplied to an aircraft departing this state, your third question inquires which activity, if any, makes the alcoholic beverages taxable under the following provisions of the Texas Liquor Control Act: Article I, Section 21,[4] Article I, Section 21 1/8,[5] or Article II, Section 23.[6]

---

[4] Art. 666-21, V.P.C.

[5] Art. 666-21 1/8, V.P.C.

[6] Art. 667-23, V.P.C.

These sections respectively imposed gallonage and barrel excise taxes on the "first sale" of liquor or beer within this state. "First sale" is defined broadly to include possession, distribution, or use of all liquor refined, blended, manufactured, imported into, or in any other manner produced, acquired, possessed, or brought into this state. However, under the general scheme, the tax is not <u>due and payable</u> until the first <u>actual</u> sale within this state. Section 21 1/8A, 1(b) provides:

> "The tax on <u>liquor</u> . . . imported into this state, <u>shall become due and payable</u> . . . following the 'first sale' which <u>time for the purpose of this section shall</u> <u>mean the first actual sale by the holder</u> <u>of any wholesaler's permit to the holder</u> <u>of any other permit authorizing the retail</u> <u>sale of the beverage to be taxed."</u> (Emphasis added).

The special Airline Beverage Permit does not precisely fit within the general scheme since "first sale" is defined as the first actual sale by a <u>wholesaler</u> to a <u>retailer</u>. However, Section 21 1/8 A2, <u>supra</u>, seems to evince a legislative intent that the reporting system be synchronized for those who transport liquor through this State for out-of-state consumption. Since that section declares the legislative policy to tax only beverages sold or consumed within Texas, any system other than a reporting of taxes due on liquor <u>actually sold or consumed</u> in Texas would seem unreasonably cumbersome. Because we are unable to see any appreciable distinction as to the provisions pertaining to the barrel tax on beer in Article 2, Section 23, we conclude that the same standards would apply.

Excise taxes on beverages purchased out-of-state and transported through this state only for service out-of-state might further run afoul of the commerce clause of the United States Constitution. [United States Constitution, Article §8, cl3.] This office has rendered an opinion discussing the interrelation of the Commerce Clause and the 21st Amendment to the United States Constitution[7] as to state regulation of interstate commerce

---

[7]The 21st amendment (ratified December 5, 1933) repealed the prohibition amendment and left regulation of alcoholic beverages to the individual States within their boundaries.

where liquor is concerned.  cf. Attorney General Opinion No. M-227.  The most exhaustive judicial discussions of this matter are Hostetter vs. Idlewild Bon Voyage Liquor Corporation, 377 U.S. 324, (1964) and Ammex Warehouse Company of San Ysidro, Inc. vs. Department of Alcoholic Beverage Control For the State of California, 224 F.Supp. 546 (1963).  These cases held that no state can completely prohibit interstate commerce where liquor is concerned, although reasonable regulations will be constitutionally tolerated.  Both courts, however, used language strongly indicating that such regulations would be those aimed at preventing unlawful diversion or use of alcoholic beverages within the state.  We doubt seriously that a gallonage or barrel tax upon liquor or beer only transported through this state could reasonabely be calculated as measures preventing unlawful diversion into Texas.  We therefore conclude that the gallonage and barrel taxes cannot lawfully be collected on liquor and beer simply transported through Texas for consumption out-of-state because such taxes would be an unwarranted regulation of interstate commerce a field pre-empted from State regulation.[8]

Our answer to question number 3 is that beverages purchased, transported, stored and sold, pursuant to the procedures discussed in this opinion become taxable upon the first actual sale or consumption within Texas.

## SUMMARY

Article 666-15(21) V.P.C. authorizes holders of Airline Beverage Permits to purchase alcoholic beverages outside Texas, transport them into Texas, store same at Texas airports and supply departing aircraft with such beverages.  Assuming the foregoing activity, the taxable event, for purposes of Article I, T.L.C.A. §§ 21, 21 1/8 and Article II, §23, (Art. 666-21, 666-21 1/8 and 667-23, V.P.C., respectively), is the first actual sale of alcoholic beverages within Texas airspace.

---

[8]It is probable, however, that beverages imported into the state and transported through this state for consumption and service without this state would have to be transported in conjunction with a carrier's permit as defined in Article I, Section 15 (§12).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Earl S. Hines
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

Jay Floyd
Harold Kennedy
W.O. Shultz
Bob Owen
Gordon Cass

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant